**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BRANDON MARCHIONE,

     Plaintiff,

v.                               Case No. 8:20-cv-2995-KKM-SPF

CHRISTOPHER NOCCO, JEFFREY
HARRINGTON, JENNIFER
 CHRISTENSEN, JEFFREY PEAKE,
and JENNIE JONES,

     Defendants.

_____/

**ORDER**

Plaintiff Brandon Marchione is a former employee of the Pasco County Sheriff's Office who brings constitutional and Racketeer Influenced and Corrupt Organizations Act (RICO) claims against his former supervisors and colleagues. His efforts to transform his employment disputes into RICO and constitutional ones are unsuccessful. Instead, Marchione's amended complaint comprises a shotgun pleading and, even for the identifiable claims, fails to state a claim upon which relief can be granted. As a result, the Court grants Defendants' motion to dismiss (Doc. 20), dismisses Marchione's amended complaint with prejudice, and directs the clerk to enter judgment in Defendants' favor.

I.     **Procedural History**

The history of this litigation is both protracted and procedurally painful, yet with little advancement on the merits. On April 16, 2019, Christopher J. Squitieri and two other plaintiffs filed a complaint against fifteen defendants, all of whom were current or former employees of the Pasco County Sheriff's Office ("Squitieri litigation"), alleging a civil RICO and state law claim. *See Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS. A couple months later, an amended complaint was filed in the case; it named twenty plaintiffs— including Marchione—and forty-five defendants. After receiving leave from the Court (at that time, the case was before the Honorable Charlene Honeywell), the Squitieri litigation plaintiffs filed a second amended complaint on August 7, 2019. Defendants moved to dismiss plaintiffs' second amended complaint less than a week later. During a hearing on defendants' motion to dismiss, Judge Honeywell step-by-step explained the deficiencies remaining in the plaintiffs' pleading and orally granted-in-part defendants' motion to dismiss the second amended complaint and directed plaintiffs to file a third amended complaint that complied with the Federal Rules of Civil Procedure. The Squitieri litigation plaintiffs filed a third amended complaint, which defendants again moved to dismiss.

After entering an order to show cause and considering plaintiffs' response, Judge Honeywell severed the Squitieri litigation claims and ordered plaintiffs to pursue their claims in separate actions against the appropriate defendants by December 16, 2020.

Marchione initiated this action by filing a complaint against Defendants Christopher Nocco, Jeffrey Harrington, Jennifer Christensen, Jeffrey Peake, and Jennie Jones. (Doc. 1.) Marchione then filed an Amended Complaint on February 19, 2021, alleging a civil RICO claim (Count I) and various constitutional violations (Count II). (Doc. 16.) Defendants move to dismiss the amended complaint as a shotgun pleading and for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 20.) Marchione opposes the motion to dismiss (Doc. 24), and the Court stayed discovery pending the resolution of the motion (Doc. 25).

## II.    Factual Background

Marchione's Amended Complaint describes his inability to work as a "road Deputy," a criminal investigation into his wife, and his subsequent termination from the Sheriff's Office.

Marchione received dual certification as a corrections officer and as a road deputy. (Doc. 16 at ¶ 25.) He made a request for a road deputy position and was initially denied— but when he "made it known that he had applied to [the] Tampa Police Department," he was offered the position. (*Id.* at ¶ 26.) In 2011, Marchione's wife was arrested and, as required by the Sheriff's Office rules, "he apprised all required commanding Staff." Roughly one year later, on the day before he began training,[1] he was "pull[ed] . . . out of

---

[1] The complaint is unclear, but the Court understands this training to be for the road deputy position. (*See* Doc. 16 at ¶ 28.)

class" by the Defendants and told that he had an "Internal Affairs Investigation pending for conduct unbecoming and informal statements." (*Id.* at ¶ 28.) The Defendants transferred Marchione "back to jail duty" until he was cleared of the investigation. (*Id.* at ¶ 29.) Although Marchione was ultimately cleared of any wrongdoing in the investigation, he was still denied the road deputy position. (*Id.* at ¶ 30.)

He was later charged with two more complaints for "conduct unbecoming." (*Id.* at ¶¶ 31–32.) The investigators asked Marchione's neighbors if Marchione "was still in a relationship with his then fiancé, who is now his wife, while her criminal case was pending." (*Id.* at ¶ 33.) During the third Internal Affairs Complaint investigation, Marchione was fired by Defendants, although they later amended the termination to state that he "resigned." (*Id.* at ¶¶ 34–35.)

In his amended complaint, Marchione also describes the "Intelligence Led Policing" program that the Sheriff's Office had implemented. Marchione alleges that the ILP program is unconstitutional, "targets those deemed to be 'prolific offenders,'" targets citizens "based on family relationships," and instructs law enforcement "to focus [their] efforts on those criminals who [they] have reason to believe are frequent or prolific offenders." (*Id.* at ¶¶ 16, 22, 19.) "The major problem with the ILP practices," Marchione alleges, is that they rest on the notion that "[s]peed is critical to success and bureaucratic processes that delay implementation must be overcome"—even if those "bureaucratic

processes" "are the fundamental constitutional considerations of 'probable cause' and the many other constitutional protections that apply to all citizens in a free society." (*Id.* at ¶ 20.) Marchione alleges that when he did not "play[] along" and "enforc[e] the unconstitutional dimensions and components of the ILP Program against innocent citizens of Pasco County," Defendants retaliated against him with the above-described "baseless internal departmental investigation intended to ruin [his] career." (*Id.* at ¶¶ 22–23.) Yet, the complaint is devoid of any allegations as to when or how Marchione did not "play along" with the ILP Program.

## III.   Analysis

### a.   Shotgun Pleading

Defendants first argue that the Amended Complaint should be dismissed as an impermissible shotgun pleading. (Doc. 20 at 4.) The Court concurs.

#### i.   Legal Standard

A shotgun pleading is any pleading which "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Although shotgun pleadings can take many forms, the Eleventh Circuit has identified four "rough types" or categories of shotgun pleadings. *Id.* at 1321–23. First, the most common type contains "multiple counts where each count adopts the allegations of

all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321 (footnote omitted). The second type of shotgun pleading is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22 (footnote omitted). "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23 (footnote omitted). "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* (footnote omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (footnote omitted). And they violate the Federal Rules of Civil Procedure, most notably Rules 8 and 10.

### ii. Analysis

Defendants argue that Marchione's amended complaint commits the venial sin of being "replete with 'conclusory, vague, and immaterial facts obviously not connected to any particular cause of action' and otherwise fails to advise defendants of the claims asserted against them." (Doc. 20 at 4–5 (citation omitted).) The Court generally agrees, but also finds that the amended complaint makes the mortal mistake of not separating each claim

for relief into a different count. Marchione received notice of these pleading deficiencies once the amended complaint[2] was filed in the Squitieri litigation in 2019. Indeed, at a hearing on the defendants' motion to dismiss the second amended complaint in the Squitieri litigation, Marchione's attorney, the same counsel as in the Squitieri litigation and in this case and the signatory of the Amended Complaint here, admitted that the second amended complaint was "poorly drafted." *Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS, (Doc. 171 at 7). In the same hearing, Judge Honeywell opined that "the complaint [was] so poorly drafted" that she could not "even get to the merits of it" and that the amended complaint was "absolutely" a "shotgun pleading"; "there [was] no mistake about it." (*Id.* at 6, 8.) Despite these judicial warnings and multiple motions to dismiss in the Squitieri litigation that highlighted the complaints' shortfalls, the deficiencies remained in Marchione's three Squitieri litigation complaints and two complaints in this case. Rather than correct the deficiencies, Marchione persisted in submitting poorly drafted pleadings by copying and pasting numerous paragraphs from previous iterations of the Squitieri litigation complaints and his first complaint in this case into the Amended Complaint that is now before the Court.

To begin, Marchione's Amended Complaint is plagued with immaterial and seemingly irrelevant allegations that do not obviously connect to any particular claim for

---

[2] Marchione joined as a plaintiff in the amended complaint filed in the Squitieri litigation.

relief. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (explaining that a complaint was undoubtably a shotgun pleading where it was "rife with immaterial factual allegations"). Count I of the Amended Complaint (the RICO claim) opens with Marchione "re-alleg[ing] and re-incorporat[ing]" all of the preceding paragraphs in the complaint (paragraphs 1–36)—including the sections on jurisdiction and venue, the parties, and the general allegations. (Doc. 16 at ¶ 37.) He makes the same mistake in Count II of his Amended Complaint (various constitutional violations), "re-alleg[ing] and re-incorporat[ing]" paragraphs 1–36—leaving Defendants and the Court to puzzle over which allegations connect to which element of the RICO claim. (*Id.* at ¶ 43.)

Attempting to construe which allegations connect to each claim proves an especially difficult task here where Marchione includes many allegations that do not obviously relate to any claim in the Amended Complaint. For example, more than a third of Marchione's "General Allegations" describe the ILP Program. (*See id.* at ¶¶ 13–36.) But it is not clear from the Amended Complaint which claim these allegations support. The RICO claim consists of a variety of purportedly illegal conduct but none of the illegal conduct alleged is the ILP program itself and the claim contains no allegations that the alleged criminal acts were in retaliation for opposition to the ILP program. (*See id.* at ¶¶ 37–42.) Neither does Count II allege that the constitutional violations were in retaliation to resistance to the ILP program. (*See id.* at ¶¶ 43–48.) Instead, there are conclusory allegations earlier in the

Amended Complaint that the Defendants retaliate against those who resist implementation of the ILP Program. (*See, e.g.*, *id.* at ¶ 21.)

Marchione's response to the Defendants' motion to dismiss creates further confusion. He argues that the "ILP section describes the authoritarian attitude of the Defendants toward their subordinate[s] who dared to question or go against the 'regime,' as [Marchione] did." (Doc. 24 at 3.) As for how Marchione actually opposed the ILP program, Marchione quotes his Amended Complaint's allegation that he "made it known that he had applied to the Tampa Police Department." (*Id.*) But in his Amended Complaint, Marchione claims that he was "denied his request to be a road Deputy" and then "made it known that he had applied to [the] Tampa Police Department," after which he was offered the road deputy position. (Doc. 16 at ¶ 26.) This factual allegation cannot plausibly give rise to an inference that Marchione voiced opposition to the ILP program; it merely alleges that Marchione engaged in commonplace employment negotiation by seeking a different post when not provided with the one he wanted from his current employer.

Marchione's response further argues that the ILP requires Sheriff's Deputies "to target the families of those suspected of and convicted of committing crimes, explaining the extra harassment Marchione received after his wife was arrested." (Doc. 24 at 4.) Marchione also contends that his First Amendment claim arose from the ILP program

9

because the program targets the family of criminal suspects, causing the Defendants to retaliate against Marchione for marrying a criminal suspect. (*Id.* at 13.) These arguments connect the facts about the ILP program with some of his claims, but still fail to explain the relevance of many paragraphs of the Amended Complaint. For example, Marchione alleges that the Defendants' criminal enterprise was targeting Marchione and others "who would not exhibit undying loyalty to all operational demands the Defendants placed on [Marchione]," that "any resistance to the unconstitutional actions demanded by implementation of the IPL by [Marchione] would result in the swift application of the various tools used by the Defendants," that if Marchione "exhibited any resistance," the "Defendants [would] engag[e] in abuse, intimidation, threatened or actual incarceration, extortion, defamation, and permanent damage to [Marchione's] ability to pursue alternative careers in law enforcement," and that when Marchione did not cooperate, the Defendants retaliated. (Doc. 16 at ¶¶ 16, 21, 22, 23.) All these allegations are conditioned on the premise that Marchione opposed the program—an allegation that Marchione never makes. Thus, all the allegations about the Defendants' practice of retaliating against those who oppose the ILP program are irrelevant to any of Marchione's claims.

In short, many allegations in Marchione's Amended Complaint appear to be immaterial or irrelevant to his claims, leaving Defendants to speculate about the grounds on which Marchione's claims rest. *See Weiland*, 792 F.3d at 1323 ("The unifying

characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). And Marchione's opposition to Defendants' motion to dismiss (Doc. 24) fails to provide the much-needed explanation and clarity, leaving the Court and Defendants unsure of which allegations are intended to support which claims for relief. *See Weiland*, 792 F.3d at 1325.

Additionally, Marchione's Amended Complaint is fraught with vague and conclusory allegations. *See Barmapov*, 986 F.3d at 1325 (explaining that a complaint was undoubtably a shotgun pleading where it included "numerous vague and conclusory allegations"). For example, Marchione alleges that Defendants "threaten[ed him] to resign or face dismissal," (Doc. 16 at ¶ 40), but never provide any facts supporting this claim—in fact, he alleges that he was fired but his record was changed to say "resigned," (*id.* at ¶ 34). And, without explaining how, Marchione alleges that Defendants conspired to engage in theft or embezzlement from an employee benefit plan. (*Id.* at ¶ 41.) Without explanation or factual allegations for support, such vague and conclusory statements are insufficient to meet the pleading requirements of Rule 8(a)(2). *See Barmapov*, 986 F.3d at 1322, 1324–26.

Further, Count II improperly lumps together a variety of constitutional violations.[3] (*See* Doc. 16 at ¶¶ 43–48.) Marchione alleges that "Defendants, in their official capacities, punished [Marchione] for exercising his First Amendment rights," (*id.* at ¶ 45); that Defendant Nocco took "a valuable property right protected by the Constitution" away from Marchione (his job), (*id.* at ¶ 46); that Defendants "denied [Marchione] equal protection of the law," (*id.* at ¶ 47); and that Defendants' conduct "constitutes an unlawful and unauthorized taking of [Marchione's] job, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment," (*id.*). In the six paragraphs that comprise Count II, Marchione appears to allege violations of his First, Fifth, and Fourteenth Amendment rights. (*See id.* at ¶¶ 43–48.) Of course, his earlier allegation in the Amended Complaint listed "the Fourth, Fifth, and Fourteenth Amendment[s]." (*See id.* at ¶ 2 (without mentioning the First Amendment).) "[W]here a plaintiff asserts multiple claims for relief, a properly drafted pleading 'will present each claim for relief in a separate count.'" *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 907 (11th Cir. 2013) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). The failure to separate each claim

---

[3] Count I of Marchione's Amended Complaint also alleges multiple claims—specifically, he alleges both federal and state RICO claims. (Doc. 16 at ¶ 42 (alleging violations of 18 U.S.C. § 1961 and section 895.02(8)(b) of the Florida Statutes).)

for relief into a different count, as required by Rule 10(b), is a hallmark of a shotgun pleading and makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson*, 77 F.3d at 366; *see Barmapov*, 986 F.3d at 1325. Accordingly, the Court dismisses Marchione's Amended Complaint as an impermissible shotgun pleading.

### b.  Failure to State a Claim under Rule 12(b)(6)

In the alternative, Defendants argue that Marchione's claims—the federal civil RICO claim and constitutional claims—fail to state a claim upon which relief may be granted.[4] (Doc. 20 at 7–22.) Again, the Court agrees.

---

[4] Marchione also alleges that Defendants violated Florida's RICO statute. But in pleading his state law claim, Marchione only cites to section 895.02(8)(b), Florida Statutes—the Florida *criminal* RICO statute. Not only is this state law claim insufficiently pleaded, section 895.05(6) limits the relief available for a private person to injunctive relief. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (explaining that section 895.05(6) of the Florida criminal RICO statute "allows a private plaintiff to bring a civil suit for equitable relief only"). Because Marchione is no longer an employee of the Pasco County Sheriff's Office and has alleged no threat of future injury, he lacks standing to seek injunctive relief under Florida law. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) (noting that plaintiffs who were former employees no longer employed by the defendant "lack[ed] standing to seek injunctive or declaratory relief against its employment practices"); *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) ("[T]his Court has held that former employees who submit no fact that they will be discriminated against in the future lack standing to seek an injunction." (alteration in original) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997))). Although Marchione argues in his response to Defendants' motion to dismiss that "[t]he injunctive relief requested under [Florida law] is the correction of the false Internal Affairs reports that continue to damage [Marchione] by damaging his reputation and ability to find a job in law enforcement" and that he does not seek an injunction based on "employment practices" (Doc. 24 at 4-5), this argument fails. Marchione does not mention injunctive relief anywhere in his amended complaint (*see* Doc. 16), much less allege facts sufficient to plead the elements entitling him to such relief. Further, neither his amended complaint (*see* Doc. 16) nor his response (*see* Doc. 24) contain allegations explaining how an injunction could provide the relief he seeks (correcting an internal affairs report) or explaining how this relief is connected to any racketeering activity, as required under Florida's criminal RICO statute.

### i.  Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

### ii.  RICO Claim Standard
#### 1.  Standard

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to "[a]ny person injured

in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). To state a prima facie civil RICO claim under § 1964(c), a plaintiff must establish "three essential elements: first, that the defendant[s] committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant[s'] racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations and punctuation omitted). Failing to adequately plead any one of these elements warrants dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

### 2.  Analysis

Marchione alleges five different kinds of predicate acts but fails to sufficiently allege a violation of any of them. And even had he successfully alleged predicate acts, he fails to allege that the predicate acts constitute a pattern of racketeering activity. Marchione thus fails to allege a RICO claim.

### a.  Marchione fails to plead any predicate acts under 18 U.S.C. § 1961(1).

An act of racketeering activity, commonly known as a "predicate act," is statutorily defined and includes a long list of state and federal crimes. *See* 18 U.S.C. § 1961(1). In order to be a predicate act, the act must be indictable under a variety of federal statutes or

constitute an "act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical" which is chargeable under state law.[5] *Id.* Marchione alleges that the Defendants "have engaged in a pattern and practice, through the Pasco [County] Sheriff's Office, of engaging in 'racketeering activity'" through the following predicate acts: (1) mail fraud under 18 U.S.C. § 1341; (2) wire fraud under 18 U.S.C. § 1343; (3) theft or embezzlement from an employee benefit plan in violation of § 664 of the Florida Statutes; (4) extortion under Florida state law; and (5) perjury under Florida state law. (Doc. 16 at ¶¶ 37–42.)[6]

In addition to the basic pleading standards, Marchione must meet the heightened pleading requirements of Rule 9(b) when alleging predicate acts of fraud. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." (citation omitted)); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997) (explaining that "the Plaintiffs would be required to replead their RICO claims with the specificity required in Federal Rule of Civil Procedure

---

[5] Section 1961(1) also provides several other ways of alleging a predicate act which are irrelevant here.

[6] Marchione also alleges in his "General Allegations" that the Defendants violated 18 U.S.C. § 1512(b) by tampering with a witness, victim, or informant and § 1513(e) by retaliating against a witness, victim, or informant. But Marchione fails to mention these alleged predicate acts anywhere else in his Amended Complaint, including his RICO count. In the absence of any additional factual allegations to support these alleged predicate acts, Marchione fails to properly plead them. Further, even if he had pleaded them, he failed to allege any "official proceeding" as defined in § 1515 for a violation of § 1512(b) or that he provided any "truthful information relating to the commission or possible commission of any Federal offense" for a violation of § 1513(e).

9(b)"). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co.*, 482 F.3d at 1316–17.

"A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215. Marchione fails to do so and, consequently, fails to sufficiently plead any of these predicate acts for the reasons discussed below.

### i.   Marchione fails to plead a violation of either 18 U.S.C. §§ 1341 or 1343.

Marchione alleges that the "Defendants, in their individual capacity," violated 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud) when they "pursued all three complaints for alleged contacts with a criminal" and by "transmit[ing]" the documents "by mail or electronic means." (Doc. 16 at ¶¶ 38–39.) To establish liability under the federal mail and wire fraud statutes, a plaintiff must prove: "(1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000) (citation omitted).

Marchione fails to successfully allege that the Defendants "used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Id.* The sole allegation in the Amended Complaint related to the mails or interstate wires is Marchione's conclusory allegation of the element itself when he alleges that the documents "were transmitted either by mail or[ ]electronic means." (Doc. 16 at ¶ 39.) Marchione fails to allege any specifics as to what wires or mail were used. Were the Internal Affairs Complaints mailed from one office to another? Were they transmitted over a wire via email, uploaded to the internet, or sent by fax? The allegation that the document was "transmitted either by mail or electronic means" is a mere conclusory legal claim that is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. Marchione fails to plead the predicate acts of mail or wire fraud.

### ii. Marchione fails to plead a predicate act under 18 U.S.C. § 664

In his Amended Complaint, Marchione alleges that Defendants "conspired to violate 18 U.S.C. § 664. – Theft or embezzlement from [an] employee benefit plan." (Doc. 16 at ¶ 41.) Section 664 provides that: "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both." The statute

further clarifies that only embezzlement from benefit plans subject to title I of the Employee Retirement Income Security Act of 1974 (ERISA) counts for § 664.

The Defendants point out that the Sheriff's Office participates in the Florida Retirement System, which is not subject to ERISA. (Doc. 20 at 15.) Marchione does not allege that he has any benefit plan that is subject to ERISA. (*See* Doc. 16.) According to the Defendants, the Florida Retirement System is a government plan and "government plan[s]," which are "plan[s] established . . . by the government of any State or political subdivision thereof," 29 U.S.C. § 1002(32), are expressly excepted from ERISA, § 1003(b)(1).

Because Marchione fails to allege facts that make it plausible that he was part of any benefit plan subject to ERISA, he fails to allege a predicate act for RICO through § 664.

### iii.  Marchione fails to plead a predicate act under section 837 of the Florida Statutes.

Marchione alleges that the Defendants violated section 837 of the Florida Statutes, the Florida perjury statute, by engaging in "[t]he conduct described in the General Allegations above." (Doc. 16 at ¶ 42.) There are six sections within chapter 837 of the Florida Statutes which proscribe different forms of perjury, but Marchione does not specify which section he alleges that the Defendants violated. Nor does Marchione specify what conduct constituted the perjury. Marchione's incorporation of the "general allegations" gives little notice to the Court or to the Defendants of what specific conduct is alleged to

have violated chapter 837 and, lacking "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal* 556 U.S. at 678, fails to state a plausible claim. Each of the sections within chapter 837 that proscribe conduct requires several elements. Common to each of them is a requirement of some false statement. While the Court might be able to speculate as to what conduct allegedly constitutes the false statement, it is unable to imagine the possible—but unalleged— conduct that violated the other elements of these different prohibitions.

The Court takes each section of chapter 837 in turn. Sections 837.012, 837.02, and 837.05 require that the false statements be made under oath. Marchione does not allege that the Defendants made any statements under oath. Sections 837.05 and 837.055 require that false information be given to a law enforcement officer and relate to an alleged commission of a crime, a felony investigation, or a missing person investigation. Marchione does not allege that the Defendants gave any false information related to the commission of a crime or missing person investigation. He alleges that his wife was arrested and was suspected of a crime and that investigators from the Sheriff's Office asked Marchione's neighbors if Marchione was still in a relationship with his wife. (Doc. 16 at ¶¶ 27, 33.) He alleges the Internal Affairs Complaints against *him* were baseless, (*see, e.g.*, *id.* at ¶ 23), but makes no allegation that the Defendants gave false information about his wife's alleged criminal activity. These five sections are unavailable to Marchione.

The one remaining provision, section 837.06, proscribes "mak[ing] a false statement in writing with the intent to mislead a public servant in the performance of his or her official duty." Assuming that the Internal Affairs Complaints were the false statements, the Court is unable to determine from any allegation in the Amended Complaint who the public servant was that the Defendants "intended to mislead." Were the complaints intended to mislead a supervisor who had the power to terminate Marchione? Marchione does not say—instead he alleges that all of the Defendants fired him. (Doc. 16 at ¶ 34.) But if the Defendants had the power of termination, who would they be intending to mislead? In any event, Marchione does not specify and the Court cannot provide the factual allegations on his behalf. Marchione fails to allege perjury as a predicate act.

### iv. Marchione fails to plead a predicate act under section 836.05 of the Florida Statutes.

Marchione alleges that the Defendants "engaged in threats or extortion in violation of Fla. Stat. § 836.05." (Doc. 16 at ¶ 42.) Section 836.05 of the Florida Statutes criminalizes extortion, stating that whoever "maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain

21

from doing any act against his or her will, shall be guilty of a" second-degree felony. Florida's "extortion statute prohibits only those utterances or communications which constitute malicious threats to do injury to another's person, reputation, or property." *Carricarte v. State*, 384 So. 2d 1261, 1263 (Fla. 1980). And "the threats must be made with the intent to extort money or the intent to compel another to act or refrain from acting against his will." *Id.*

Marchione never alleges that the Defendants threatened him. Instead, he was fired "[d]uring his Third Internal Affairs Complaint." (Doc. 16 at ¶ 34.) Such an allegation fails to plausibly allege extortion as a predicate act.

### b. Marchione fails to allege a pattern of racketeering activity that injured his business or property.

Even if Marchione had adequately pleaded any predicate acts (he has not), he fails to establish that his predicate acts constitute a pattern of racketeering activity.[7] Indeed, the Court cannot identify two alleged instances of any criminal activity—much less the pattern required by a RICO claim—in Marchione's Amended Complaint. Accordingly,

---

[7] A generous reading of the response to the motion to dismiss would be that Marchione alleges that the *implementation* of the ILP program itself constituted the predicate acts making up the pattern. (Doc. 24 at 8–12.) But Marchione does not make that allegation in his Amended Complaint and fails to explain, in both the operative pleading and response in opposition to the motion to dismiss, how the ILP program constitutes racketeering activity under 18 U.S.C. § 1962. None of the predicate acts pleaded in Marchione's Amended Complaint relate to the ILP program (or at least the connection is not explained); they all relate to Marchione's allegedly falsified Internal Affairs Complaints. (*See generally* Doc. 16.) And considering that Marchione does not clearly point to any individual predicate acts—whether related to the ILP program or not—he cannot show a pattern of racketeering activity.

Marchione cannot establish the "pattern of racketeering activity" element for his civil RICO claim. *See Jackson*, 372 F.3d at 1264.

### 3. RICO Claim Conclusion

Because Marchione fails to adequately allege the existence of any predicate acts or a pattern of racketeering activity and because the failure to plead any one of these elements is fatal to a RICO claim, his civil RICO claim fails.

### iii. Constitutional Claims

A generous reading of the Amended Complaint reveals allegations of violations of Marchione's constitutional rights under the First, Fifth, and Fourteenth Amendments.[8] (Doc. 16 at ¶¶ 43–48.) But because Marchione does not sufficiently state a claim upon which relief can be granted, his constitutional claims fail. Specifically, as Defendants argue, "Marchione's Amended Complaint fails to allege how his constitutional rights were infringed/implicated by Defendants' alleged conduct." (Doc. 20 at 20.)

---

[8] At the beginning of his Amended Complaint, Marchione explains that this action arises under the "Fourth, Fifth, and Fourteenth Amendment[s] to the United States Constitution" and in Count II, he mentions the First, Fifth and Fourteenth Amendments. (Doc. 16 at ¶ 2.) No Fourth Amendment violation is pleaded in Count II, so the Court assumes it was an error. As for the Fifth and Fourteenth Amendment claims, Marchione provides only conclusory statements and wholly fails to support his conclusions with factual allegations. In the penultimate paragraph of Count II of his amended complaint, Marchione states that Defendants, in their official capacities, "denie[d Marchione] equal protection of the law in that the Defendants' conduct was arbitrary, oppressive and capricious and unreasonably required [Marchione] to submit to controls not imposed on other similarly situated Sheriff's Deputies" and "constitute[d] an unlawful and unauthorized taking of [Marchione's] job, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment." (*Id.* at ¶ 47.) Marchione never includes any other allegations relating to these constitutional claims. And "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.

As for the First Amendment claim, Marchione alleges that "Defendants, in their official capacities, punished [Marchione] for exercising his First Amendment rights." (Doc. 16 at ¶ 45.) Although Marchione's Amended Complaint includes several legal conclusions—e.g., that Defendants "abridged and restrained [Marchione's] rights to free speech" and the violation of Marchione's First Amendment rights "constitutes an impermissible 'chilling effect' on constitutionally protected speech and expression," (*id.* at ¶ 47)—it does not include factual allegations to support his claim.

Importantly, Marchione fails to allege or provide facts to support any theory of municipal liability, which he must do since Count II is against Defendants in their official capacities only. (*See* Doc. 16 at ¶¶ 44–48.) "A suit against a municipal officer in his official capacity is effectively a suit against the government entity that the officer represents." *Lopez v. Gibson*, 770 F. App'x 982, 991 (11th Cir. 2019). Thus, a suit against Defendant Nocco is effectively an action against the governmental entity that Defendant Nocco represents—here, Pasco County. *Id.*; *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). An official policy or custom can manifest in several ways. For example, municipal liability may be premised on a single illegal act by a municipal officer—but only "when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter." *Lopez*, 770 F. App'x at 991 (quotation

24

omitted). And municipal liability exists only when there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Cook ex rel. Estate of Tessier*, 402 F.3d at 1116 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see Lopez*, 770 F. App'x at 991.

Although Marchione argues that retaliating against employees for exercising their First Amendment rights is "the policy and custom of the Sheriff's Office," (Doc. 24 at 13), he does not identify in his Amended Complaint what First Amendment right he exercised that was subject to retaliation. The Amended Complaint is filled with cursory allegations that the Defendants retaliate against those who do not cooperate with the ILP program or who are not loyal to the "operational demands" of the Defendants. (Doc. 16 at ¶¶ 16, 22.) But the Amended Complaint does not allege anywhere that Marchione opposed the operational demands of the Defendants or allege facts supporting an inference that he did. Marchione appears to argue in his response to the Defendants' motion to dismiss that he opposed the ILP program when he "made it known that he applied to [the] Tampa Police Department." (Doc. 24 at 3.) This inference does not follow from the Amended Complaint, where Marchione alleges that he "made it known" about his other job application after his request to be a road deputy was denied. (Doc. 16 at ¶ 26.) After he made his application to the Tampa Police Department known—the Amended Complaint does not say to whom—he received the road deputy position. (*Id.*) Absent other factual

explanations, this statement cannot be construed as opposing the ILP program. Rather, the obvious import to the average reader is that Marchione successfully negotiated for a better position.

Marchione also argues in his response to the motion to dismiss that his First Amendment right to association was infringed when the Defendants punished him for "engaging and marrying his current wife and mother of his child, who had a pending criminal investigation at the time." (Doc. 24 at 13.) As a starting matter, the term "association" does not appear anywhere in the Amended Complaint. (*See* Doc. 16.) The closest he comes to alleging a freedom of association claim is when he alleges that he was "punished . . . for exercising his First Amendment rights." (*Id.* at ¶ 45.) Several sentences later, Marchione claims the Defendants' conduct "constitutes an impermissible 'chilling effect' on constitutionally protected speech and expression." (*Id.* at ¶ 47.) Of course, Marchione never alleges in the Amended Complaint that the constitutionally protected expression was marrying his wife (that clarification arises only in his response to the motion to dismiss). Although "a complaint need not pin plaintiff's claim for relief to a precise legal theory," *Skinner v. Switzer*, 562 U.S. 521, 530 (2011), it must at least put the defendant "on notice as to the claim being asserted against him," *Plumbers & Steamfitters Loc. No. 150 Pension Fund v. Vertex Const. Co.*, 932 F.2d 1443, 1448 (11th Cir. 1991) (quotation and emphasis omitted). Without any reference to "association" or an allegation more

26

specific than "punish[ment] . . . for exercising his First Amendment rights," (Doc. 16 at ¶ 45), Marchione's Amended Complaint fails to give notice to the Defendants of the claim being asserted against them.[9] Regardless, fatal to his First Amendment retaliation claim, Marchione fails to sufficiently allege his injury was *caused* by the Defendants' policy or custom.

To state a claim under § 1983 against a municipality for a constitutional violation, Marchione must allege a policy or custom that violates the Constitution and causes his injury. *See Cook ex rel. Estate of Tessier*, 402 F.3d at 1116. In his Amended Complaint, Marchione claims that the ILP program targets "citizens . . . based on family relationships" and that his wife was arrested in 2011. (Doc. 16 at ¶¶ 22, 23, 27.) He told commanding staff that his wife was arrested and, sometime in 2012, was investigated "for conduct unbecoming and informal statements." (*Id.* at ¶¶ 27–28.) He later claims this investigation—his first Internal Affairs Complaint—was in 2013. (*Id.* at ¶ 31.) Marchione was denied road duty and transferred back to jail duty. (*Id.* at ¶¶ 29– 30.) Two more Internal Affairs Complaints were filed against Marchione—his Amended Complaint does not identify when—and during the investigation of the third Internal Affairs Complaint, investigators "went to all of [Marchione's] neighbors asking if [he] was still in a relationship

---

[9] Nor does Marchione address how, as a public employee of the Pasco County Sheriff's Office, his speech or expression was harmed "in such a way as to infringe [his] asserted right." *McCabe v. Sharrett*, 12 F.3d 1558, 1564 (11th Cir. 1994) (holding that a plaintiff's First Amendment intimate association claims failed under any of three possible analytical approaches to intimate association retaliation claims).

with his then fiancé, who is now his wife, while her criminal case was pending." (*Id.* at ¶ 31–33.) Marchione was then fired, ending his employment in November 2015. (*Id.* at ¶¶ 24, 34.)

Marchione never alleges, though, that his termination was directly caused by the ILP program. In Marchione's response to the motion to dismiss, he argues that he exercised his right of association in "engaging and marrying his . . . wife . . . who had a pending criminal investigation at the time." (Doc. 24 at 13.) Yet, the few time statements that Marchione actually provide indicate that his fiancé (or wife?) was arrested in 2011 and he was employed at the Sheriff's Office until November 2015. The ILP program was implemented in 2011, (Doc. 16 at ¶ 17), leaving a four-year gap between when Marchione's fiancé was arrested and when Marchione's employment was terminated. Such a gap leaves the Court unable to plausibly infer a "direct causal link between [the ILP program] . . . and the alleged constitutional deprivation." *Cook ex rel. Estate of Tessier*, 402 F.3d at 1116 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Accordingly, Marchione's constitutional claims fail.

## IV.   Conclusion

In total between the Squitieri litigation and here, Marchione has filed five complaints. And after quintuple chances, his amended complaint remains deficient and warrants dismissal as a shotgun pleading and for failure to state a claim upon which relief

may be granted. Marchione received more than fair notice of the defects in his complaint, yet rebuffed all warnings to remedy them. The Court dismisses this case with prejudice. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014).

Accordingly, it is **ORDERED**:

(1)  Defendants' motion to dismiss Marchione's amended complaint is **GRANTED**. (Doc. 20).

(2) The Court **DISMISSES WITH PREJUDICE** Counts I and II of Marchione's amended complaint (Doc. 16) and **DISMISSES THIS ACTION**.

(3) The Clerk is directed to enter judgment in favor of Defendants, terminate any pending motions and deadlines, and to close the case.

**ORDERED** in Tampa, Florida, on September 16, 2021.

Kathryn Kimball Mizelle
United States District Judge